UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHERFAM, INC.,<br><br>         Plaintiff,<br><br>       v.<br><br>CDx DIAGNOSTICS, INC.,<br>CDx LABORITORIES, INC., &<br>ORAL CANCER PREVENTION INTERNATIONAL, INC.,<br><br>         Defendants. | **COMPLAINT** |

Plaintiff Sherfam, Inc. ("Plaintiff" or "Sherfam"), by its attorneys, Olshan Frome Wolosky LLP, as and for its Complaint, alleges as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff is owed more than $5.3 million in principal, plus interest and legal fees, by the Defendant, CDx Diagnostics, Inc. ("CDx"), pursuant to a senior term pursuant to secured note dated December 31, 2012 (the "Secured Note") issued by a Loan and Security Agreement of the same date. The Secured Note is secured by first priority liens on substantially all of CDx's assets, including all of its intellectual property. Through a Guarantee dated December 31, 2012 (the "Guarantee"), Defendants CDx Laboratories, Inc. and Oral Cancer Prevention International, Inc. have guaranteed CDx's obligations under the Secured Note. They have likewise pledged all of their assets as security.

2. Defendants are thus required, under the applicable financing documents, to turn over to the Plaintiff all of the collateral securing the loans made by Plaintiff, including its intellectual property, accounts receivable, equipment, and inventory. Defendants have not done so. Accordingly, Plaintiff brings this action to enforce its rights as a creditor.

## JURISDICTION AND VENUE

3.     The United States District Court for the Southern District of New York has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(2) because this is an action between citizens of a State and citizens or subjects of a foreign state, and the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs.

4.     Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2).  Each Defendant has consented to this venue in the transaction documents referenced in this Complaint.

## PARTIES

5.     Plaintiff Sherfam, Inc, ("Plaintiff" or "Sherfam") is an Ontario corporation, with a principal place of business of 10 Director Court, Suite 302, Woodbridge, ON L4L 7E8.

6.     Defendant CDx Diagnostics, Inc. ("CDx") is a Delaware corporation with a principal place of business at 2 Executive Boulevard, Suffern, New York 10901.

7.     Defendant CDx Laboratories, Inc. ("CDx Laboratories") is a Delaware corporation with a principal place of business at 2 Executive Boulevard, Suffern, New York 10901.

8.     Defendant Oral Cancer Prevention International, Inc. ("OCPI") is a Delaware corporation with a principal place of business at 2 Executive Boulevard, Suffern, New York 10901.  Defendants OCPI and CDx Laboratories are referred to below as the "Guarantor Defendants."

## FACTUAL BACKGROUND

I.     **The Secured Note**

9.     The Secured Note in the original principal amount of $5,320,144 (the "Principal Amount") was issued pursuant to a Loan and Security Agreement dated December 31, 2012, executed by Defendants and a group of lenders (collectively, the "Lenders"), including Plaintiff

(the "Loan Agreement").  The Loan Agreement and its accompanying transactional documents were entered into as part of a restructuring, which, among other things, recapitalized, reorganized and restated a series of loans previously advanced by Sherfam and others to Defendant CDx Laboratories.

10. Subject to certain default and acceleration provisions, the Secured Note is payable as follows:

> A principal payment of all outstanding legal fees as of February 4, 2013, inclusive of $167,000 and all interest accrued thereon, shall be due and payable in FULL in cash on such date (such principal, fees and interest constituting the "February Fee Payment").  With respect to the remaining amounts, interest, inclusive of interest in arrears, is payable in cash beginning June 30, 2014 and is payable quarterly in cash thereafter.  Principal repayments plus accrued interest is payable, inclusive of interest in arrears, beginning on March 31, 2015 and shall be repaid in 8 quarterly installments in cash.  Any remaining unpaid principal, and all accrued interest thereon, shall be due and payable IN FULL in cash on December 31, 2016.

11. Interest on the note accrued as follows:

> Interest on the principal amount outstanding shall accrue beginning on June 11, 2012 at the rate of 3% per annum until August 31, 2012 at which time interest shall accrue at the rate of 12% per annum.  Interest shall be calculated on the basis of a 360-day year, counting the actual number of days elapsed and will be added to the principal.  Following and during the continuance of an Event of Default (as defined in the Loan Agreement), interest will accrue at the prevailing rate of plus two percent (+2%) per annum.

12. Because the Secured Note was based on the restructuring of previously issued loans by Sherfam, the Note further contained the following provision:

> Notwithstanding the date of issuance of this [Secured Note], this [Secured Note] shall be deemed issued as of June 11, 2012, with interest accruing thereon from that date forward as further set forth in the interest.

13. By its terms, the Secured Note was executed "pursuant to the [Loan Agreement]" (i) incorporated by reference the Loan Agreement's default and acceleration provisions and (ii) at least one Event of Default (as defined in the Loan Agreement) has occurred and continuing

3

which has the affect of accelerating the Loan Agreement and the obligations under the Secured Note.

14. Although an Event of Default has occurred and is continuing, and the Secured Note has accelerated, the Defendants have not repaid the principal amounts of the Secured Note or the accrued interest thereon, nor has any Defendant paid any quarterly installment.

15. The Secured Note further provides that in the case of an event of default, CDx agreed to pay all costs of collection, including attorneys' fees and legal expenses of Sherfam as Lender.

## II.     The Loan Agreement

16. The Loan Agreement contains certain negative and affirmative covenants, several of which, as discussed below, have been breached by CDx.

17. Section 8.01 of the Loan Agreement sets forth what events constitute an "Event of Default" under the Secured Note and the Loan Agreement.

18. If an Event of Default under the Loan Agreement occurred and is continuing, the Plaintiff may exercise certain rights and remedies pursuant to Section 8.02 thereof, which provides as follows:

> **Rights and Remedies.** If an Event of Default shall have occurred and be continuing, the Agents may exercise any or all of the following rights and remedies on behalf of the Lenders:
>
> (a)     the Agents may exercise and enforce their rights and remedies under any or all of the Loan Documents, including declaring the Obligations immediately due and payable, all without demand, notice, presentment or protest or further action of any kind (it also being understood that the occurrence of any of the events or conditions set forth in Sections 8.01(f)(ii), (g), or (h) shall automatically cause an acceleration of the Obligations).;
>
> (b)     the Agents may enter upon the property, if allowed under applicable law, and take possession thereof; or

(c) the Agents may exercise any other rights and remedies available to them by law or agreement.

19. Pursuant to Section 9.01 of the Loan Agreement, Plaintiff and Goldstein Family Limited Partnership, LP ("Goldstein") were originally appointed as "Agents." On or about June 19, 2013, Goldstein resigned as Agent effective as of July 18, 2013. No successor Agent has been appointed pursuant to Section 9.10 of the Loan Agreement. Plaintiff Sherfam is thus the sole Agent under the Loan Agreement and entitled to exercise all Rights and Remedies under Section 8.02.

20. Pursuant to Section 8.02(a) of the Loan Agreement, Plaintiff now accelerates the Loan Agreement by declaring all amounts thereunder, inclusive of the Secured Note, immediately due and payable.

### III.   The Guarantee

21. Pursuant to Section 1(a) of the Guarantee, and without limitation, each Guarantor Defendant guaranteed all obligations of CDx arising under the Loan Agreement and the Secured Note and on account of the Guarantee, pledged its assets under the security agreements described in this Complaint.

22. The Guarantee "is a guaranty of payment and not of collection." Guarantee § 1(b).

23. Thus, under the Loan Agreement and Guarantee, each Defendant is jointly and severally obligated to the Plaintiff for all obligations of CDx.

### IV.   The Pledge and Security Agreement

24. Each of the Parties are parties to that certain Pledge and Security Agreement made and entered into as of December 31, 2012 (the "Pledge and Security Agreement"). The

Pledge and Security Agreement secures all obligations due and owing to Sherfam under the Loan Agreement and the Secured Note.

25. Pursuant to paragraph 1 of the Pledge and Security Agreement, Sherfam, as Agent, was also granted a security interest in and lien on all of each Defendants' assets (except for such assets comprising the assets pledged through the IP Security Agreement (as defined below), including but not limited to accounts, chattel paper, commercial tort claims, contracts, contract rights, deposit accounts, documents, equipment, fixtures, general intangibles, goods, instruments, intellectual property, inventory, investment property (including all securities, securities entitlements and securities accounts), letter-of-credit rights, payment intangibles, real property, software, rights of seller of goods and rights to returned or repossessed goods and all proceeds of the foregoing (collectively, the "Collateral").

26. Sherfam has duly perfected its security interest in the Collateral by filing UCC financing statements and continuation statements covering the Collateral with the Delaware Department of State.

27. Pursuant to paragraphs 17 and 18 of the Pledge and Security Agreement, upon the occurrence of an Event of Default (which includes an Event of Default under the Loan Agreement), Sherfam is entitled to take possession of the Collateral.

28. Pursuant to paragraph 21 of the Pledge and Security Agreement, each Defendant is responsible, jointly and severally, for all expenses incurred by Sherfam including, but not limited to, reasonable attorneys' fees incurred by Sherfam in connection with exercising its rights under the Pledge and Security Agreement.

V. **The Intellectual Property Security Agreement**

29. Each of the Parties are parties to that certain Intellectual Property Security Agreement made and entered into as of December 31, 2012 (the "IP Security Agreement"). The

IP Security Agreement secures all obligations due and owing to Sherfam under the Loan Agreement and the Secured Note.

30. Pursuant to paragraph 1 of the IP Security Agreement, Sherfam was granted a security interest in all of each Defendant's intellectual property and the proceeds thereof, including, *inter alia*, each Defendant's right, title and interest in and to trademarks, trade names, trade styles, service marks, logos, emblems, prints and labels, all elements of package or trade dress of goods, and all general intangibles of like nature, and all registration applications, registrations and recordings thereof, including, without limitation, registration applications, registrations and recordings in the United States Patent and Trademark Office or in any similar office or agency of the United States or in any office of the Secretary of State (or equivalent) of any state thereof, or in any similar office or agency of any country or political subdivision thereof throughout the world, all of each Defendant's right, title and interest in and to all inventions and letters patent and registration applications therefor, and all registrations and recordings thereof, including, all of each Defendant's title and interest in and to copyrights in works of authorship of any kind, and all registration applications, registrations and recordings thereof in the Office of the United States Register of Copyrights, Library of Congress, or in any similar office or agency of any country or political subdivision thereof throughout the world, and the proceeds and products, whether tangible or intangible, of any of the foregoing (collectively, the "IP Collateral").

31. Sherfam has duly perfected its security interest in the IP Collateral by filing the IP Security Agreement with the PTO.

32. Pursuant to paragraphs 10 and 11, of the Security Agreement, upon the occurrence of an Event of Default (which includes an Event of Default under the Loan Agreement), Sherfam is entitled to take possession of the IP Collateral.

33. Pursuant to paragraph 3(a) of the IP Security Agreement, upon the occurrence of an Event of Default, Sherfam may file an assignment of the Intellectual Property Collateral (the "Intellectual Property Collateral Assignment") at the PTO and Copyright Office.

34. Pursuant to paragraphs 18 of the IP Security Agreement, each Defendant is, jointly and severally, responsible for all attorneys fees expenses incurred by Sherfam in connection with exercising its rights pursuant to the IP Security Agreement

## VI. The Forbearance Agreement and the February 2014 Acknowledgement of Events of Default and Complete Waiver of All Defenses to the Remedies Sought Herein

35. Pursuant to a letter dated May 31, 2013 (the "May 2013 Default Letter"), Sherfam provided written notice to CDx of the existence and continuation of the defaults of certain affirmative, negative and financial covenants of the Loan Documents (as defined in the Loan Agreement) being Events of Default (collectively, the "May 2013 Specified Events of Default").

36. Pursuant to a letter dated October 21, 2013 (the "October 2013 Default Letter"), Sherfam provided written notice to CDx of the existence and continuation of additional defaults of certain affirmative, negative and financial covenants of the Loan Documents (as defined in the Loan Agreement) being Events of Default (collectively, the "October 2013 Specified Events of Default").

37. Pursuant to a letter dated December 11, 2013 (the "December 2013 Default Letter"), Sherfam provided written notice to CDx of the existence and continuation of additional defaults of certain affirmative, negative and financial covenants of the Loan Documents being

Events of Default (as defined in the Loan Agreement) (collectively, the "December 2013 Specified Events of Default").

38. Pursuant to the Forbearance Agreement dated February 14, 2014 (the "Forbearance Agreement"), each of the Defendants expressly acknowledged the occurrence of a number of Events of Default, including the May 2013 Specified Events of Default, the October 2013 Specified Events of Default and the December 2013 Specified Events of Default (all such Events of Default specified in the Forbearance Agreement collectively, the "Admitted Events of Default").

39. Through the Forbearance Agreement, the Defendants each acknowledged that as a "consequence of the occurrence and continuation of the [Admitted] Events of Default, Lenders are therefore entitled to exercise certain rights and remedies under and pursuant to certain of the Loan Documents." Pursuant to the Forbearance Agreement, and consistent with their obligations under the Secured Note, the Defendants jointly and severally agreed to pay for legal fees of $25,000 plus "on demand, all further reasonable and necessary costs and expenses incurred by Lenders in connection with the preparation, negotiation and execution of [the "Forbearance Agreement"] and any other Loan Documents executed pursuant hereto and any and all Agreements, modifications, and supplements to the Loan Documents, including, without limitation, the reasonable fees of Lenders legal counsel and any taxes (other than Lenders income taxes) or expenses associated with or incurred in connection with any instrument or agreement referred to herein or contemplated [thereby]." In breach of the Secured Note, the Loan Agreement and the Forbearance Agreement, such legal fees have not been paid.

40. Specifically, through the Forbearance Agreement,[1] the Defendants each acknowledged and stipulated, *inter alia*:

    a. of the close of business on December 31, 2013, the aggregate Obligations outstanding principal under the Loan Documents totals $20,334,000.00, plus accrued and/or accruing interest, post May 31, 2013, interest accrues and is payable at the default rate of 14%, costs fees, attorneys' fees and other expenses under the Loan Documents;

    b. all of the Loans and other Obligations are absolutely owing by Obligors to Lenders without any defense, deduction, offset or counterclaim (and, *to the extent any Obligor had any defense, deduction, offset or counterclaim on the date hereof, the same is hereby waived by each such Obligor*;

    c. the Existing Specified Events of Defaults [i.e., the Admitted Events of Default] have occurred and now exist under the Loan Documents;

    d. the Loan Documents executed by Borrower and the other Obligors are legal, valid and binding obligations enforceable against Borrower and the other Obligors in accordance with their respective terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, reorganization or other similar laws affecting the enforcement of creditors' rights generally and general principles of equity (whether considered in an action of law or in equity);

    e. the liens granted by Borrower and the other Obligors to Lenders in the Collateral are valid and duly perfected, first-priority liens, subject only to Permitted Liens.

(emphasis added).

41. The Acknowledged Events of Default are:

    a. The Event of Default under Section 8.01(b) of the Loan Agreement arising from the failure of the Borrower to deliver the financial statements required pursuant to Section 5.08(a) thereto on or prior to ten (10) Business Days following April 30, 2013.

    b. The Event of Default under Section 8.01(b) of the Loan Agreement arising from the failure of the Borrower to deliver the financial statements required pursuant to Section 5.08(a) thereto on or prior to ten (10) Business Days following July 30, 2013.

---

[1] Capitalized terms in the following items a through e shall have the meanings ascribed to them in the Forbearance Agreement.

3530735-1

c. The Event of Default under Section 8.01(b) of the Loan Agreement arising from the failure of the Borrower to deliver the financial statements required pursuant to Section 5.08(b) thereto on or prior to ten (10) Business Days following April 30, 2013.

d. The Event of Default under Section 8.01(b) of the Loan Agreement arising from the failure of the Borrower to deliver the certificate required pursuant to Section 5.08(d) thereto on or prior to ten (10) Business Days following April 30, 2013.

e. The Event of Default under Section 8.01(b) of the Loan Agreement arising from the failure of the Borrower to deliver the certificate required pursuant to Section 5.08(d) thereto on or prior to ten (10) Business Days following July 30, 2013.

f. The Event of Default under Section 8.01(b) of the Loan Agreement arising from the failure of the Borrower to deliver the certificate required pursuant to Section 7.02 thereto on or prior to ten (10) Business Days following April 30, 2013.

g. The Event of Default under Section 8.01(b) of the Loan Agreement arising from the failure of the Borrower to deliver the certificate required pursuant to Section 7.02 thereto on or prior to ten (10) Business Days following July 30, 2013.

h. The Event of Default under Section 8.01(c) of the Loan Agreement arising from the creation of liens in favor of Drew Niv in violation of Section 6.01 thereto.

i. The Event of Default under Section 8.01(c) of the Loan Agreement arising from the creation of liens in favor of Ellen Rutenberg in violation of Section 6.01 thereto.

j. The Event of Default under Section 8.01(c) of the Loan Agreement arising from the advancement of funds to Drew Niv in violation of Section 6.02 thereto.

k. The Event of Default under Section 8.01(c) of the Loan Agreement arising from the advancement of funds to Ellen Rutenberg in violation of Section 6.02 thereto.

l. The Event of Default under 8.01(c) of the Loan Agreement on account of any payments made to Ellen Rutenberg on account of her 2013 advances as a violation of either (a) Section 6.11 thereto; or (b), to the extent such advances are deemed on account of equity, Section 6.06 thereto.

m. In each case with respect to each of the foregoing and also a Specified Default, the Events of Default under Section 8.01(b) of the Loan

>Agreement arising from the failure, in each case, of the Borrower to deliver the notices required pursuant to Section 5.08(d) thereto, on or prior to the applicable time periods set forth thereto.

42. The Forbearance Agreement terminated by its terms on March 28, 2014 (the "Forbearance Termination Date") because the requisite conditions precedent to extend the Forbearance Termination Date were not met. Pursuant to the Forbearance Agreement, "on or after the Forbearance Termination Date, Lenders shall be authorized, at any time and without further notice to or demand upon Borrower, any Guarantor or any other person, to enforce all of its rights and remedies under the Loan Documents and applicable law."

43. Each and every Acknowledged Event of Default has occurred and all, except the Event of Default referenced in subparagraph 41(c), is continuing and the Defendants have each waived every defense thereto.

44. Plaintiff has accelerated all obligations under the Secured Note and the Loan Agreement on account of Events of Default (as defined in the Loan Agreement), including the Acknowledged Events of Default.

45. As such, Plaintiff is entitled to, *inter alia*, the relief requested in this Complaint by virtue of the Acknowledged Events of Default.

**VII. Additional Defaults Including Payment Events of Default**

46. On April 8, 2014, although not under any obligation to do so, Sherfam provided CDx a notice that the Forbearance Agreement did in fact terminate on March 28, 2014.

47. Since the Forbearance Termination Date, additional quarterly installments became due on the Secured Note. Specifically, interest only payments became due and remain unpaid on June 30, 2014, September 30, 2014, December 30, 2014, March 31, 2015, June 30, 2015, September 30, 2015 and December 30, 2015. Moreover, the first three of eight consecutive principal payments became due and remain unpaid on March 31, 2015, September 30, 2015 and

December 30, 2015.  None of these payments have been made, demonstrating Defendants' total repudiation of their contractual obligations.

48. CDx's failure to make the above-referenced quarterly installment payments within 5 business days when due each constitute Events of Default (the "Payment Events of Default") under the Secured Note and Section 8.01(a) of the Loan Agreement.  These Events of Default have not been cured.

49. Pursuant to a letter dated on or about July 28, 2014 (the "July 2014 Default Letter"), Sherfam, in accordance with the Loan Agreement, provided written notice to CDx of the first quarterly payment of Event of Default.

50. Certain other defaults have occurred and are continuing (the "Additional Defaults").  The Additional Defaults include, without limitation, (i) the failure to issue stock certificates; (ii) the non-compliance with federal regulatory statutes (in violation of Section 4.12 of the Loan Agreement), (iii) the execution of loan agreements and granting of liens with various parties, including insider William Ahdout for non-recourse account receivable financing that are outside the Collateral and the IP Collateral in violation of Section 6.01 and Section 6.02 of the Loan Agreement); (iv) an execution of a loan agreement with Mel Mac Limited in August 2014 in violation of Section 6.01 and Section 6.02 of the Loan Agreement); (v) the payment of interest other than on account of the Secured Note in violation of Section 6.11 of the Loan Agreement; and (vi) the failure to provide the reporting requirements and deliverables of the types specified in the Admitted Events of Default, that have since become come due and owing

51. Each and every Payment Event of Default and Additional Default has occurred and is continuing.

52. Plaintiff has accelerated all obligations under the Secured Note and the Loan Agreement on account of Events of Default (as defined in the Loan Agreement), including the Payment Events of Default and the Additional Default.

53. As such, Plaintiff is entitled to, *inter alia*, the relief requested in this Complaint by virtue of the Payment Events of Default and the Additional Defaults.

## FIRST CLAIM FOR RELIEF

### (Breach of the Secured Note against Defendant CDx)

54. Plaintiff repeats and realleges all of the allegations set forth in paragraphs 1 through 53 above as if fully set forth herein.

55. The failure by CDx to repay all amounts due in full the Secured Note and accrued interest and attorneys' fees, including default interest at 14% from the date of the first designated default, as of the date of this Complaint, constitutes a breach of the Secured Note.

56. By virtue of CDx's breach, Sherfam has been damaged in an amount to be determined at trial, but no less than $6 million, plus accrued interest, attorneys' fees, and costs.

## SECOND CLAIM FOR RELIEF

### (Breach of the Loan Agreement Against Defendant CDx)

57. Plaintiff repeats and realleges all of the allegations set forth in paragraphs 1 through 56 above as if fully set forth herein.

58. The failure by CDx to comply with its obligations under the Loan Agreement has caused Events of Default thereunder and accrued interest, including default interest at 14% from the date of the first designated default, as of the date of this Complaint, constitutes a breach of the Loan Agreement.

59. As Agent, Plaintiff is entitled to enforce the rights of the Lenders under the Loan Agreement.

60. By virtue of CDx's breach, Lenders under the Loan Agreement, including Sherfam, have been damaged in an amount to be determined at trial, but no less than $21 million, plus accrued interest, attorneys' fees, and costs.

### THIRD CLAIM FOR RELIEF

### (Breach of Guarantee Against Defendant CDx Laboratories and Defendant OCPI – Secured Note)

61. Plaintiff repeats and realleges all of the allegations set forth in paragraphs 1 through 60 above as if fully set forth herein.

62. The failure by the Guarantor Defendants to repay all obligations due and owing to the Plaintiff under the Secured Note constitutes a breach of the Guarantee.

63. By virtue of Defendants' breaches, Sherfam has been damaged in an amount to be determined at trial, but no less than $6 million, plus accrued interest, attorneys' fees, and costs.

### FOURTH CLAIM FOR RELIEF

### (Breach of Guarantee as Against Defendant CDx Laboratories and Defendant OCPI – Loan Agreement)

64. Plaintiff repeats and realleges all of the allegations set forth in paragraphs 1 through 63 above as if fully set forth herein.

65. The failure by the Guarantor Defendants to repay all obligations due and owing under the Loan Agreement constitutes a breach of the Guarantee.

66. As Agent, Plaintiff is entitled to enforce the rights of the Lenders under the Loan Agreement.

67. By virtue of CDx's breach, Lenders under the Loan Agreement, including Sherfam, have been damaged in an amount to be determined at trial, but no less than $21 million, plus accrued interest, attorneys' fees, and costs.

## FIFTH CLAIM FOR RELIEF

### Breach of Forbearance Agreement as Against all Defendants

68. Plaintiff repeats and realleges all of the allegations set forth in paragraphs 1 through 67 above as if fully set forth herein.

69. The failure by each Defendant to repay all obligations to pay legal fees due and owing to the Plaintiff under the Forbearance Agreement constitutes a breach of the Forbearance Agreement.

70. By virtue of Defendants' breaches, Sherfam has been damaged in an amount to be determined at trial, plus accrued interest, attorneys' fees, and costs.

## SIXTH CLAIM FOR RELIEF

### (Marshalling of Assets Against all Defendants)

71. Plaintiff repeats and realleges all of the allegations set forth in paragraphs 1 through 70 above as if fully set forth herein.

72. Based upon the foregoing, Plaintiff, as Agent, is entitled to an Order directing Defendants to Marshall in preparation for foreclosure, all of their assets in which Plaintiff, as Agent, has a security interest under the Security Agreements and Intellectual Property Security Agreements, and deliver promptly to Plaintiff a list of those assets and their locations.

73. Plaintiff has no adequate remedy at law.

## SEVENTH CLAIM FOR RELIEF

### (Direction of Transfer of Ownership Under the Security Agreement against Each Defendant)

74. Plaintiff repeats and realleges all of the allegations set forth in paragraphs 1 through 73 above as if fully set forth herein.

75. An Event of Default exists pursuant to the Security Agreement.

76. Once an Event of Default has occurred, Sherfam, as Agent, is entitled to possession of the Collateral.

77. The Defendants have not surrendered possession of the Collateral.

78. By reason of the foregoing, Sherfam is entitled to and demands a judgment directing each Defendant, and its agents, officers, directors and employees, (a) to surrender to Sherfam possession of all of the Collateral, and (b) to execute such documents as are necessary to transfer full ownership of the Collateral to Sherfam.

**EIGHTH CLAIM FOR RELIEF**

**(Direction of Transfer of Ownership Under the
Intellectual Property Security Agreement against Each Defendant)**

79. Plaintiff repeats and realleges all of the allegations set forth in paragraphs 1 through 78 above as if fully set forth herein.

80. An Event of Default exists pursuant to the IP Security Agreement.

81. Once an Event of Default has occurred, Sherfam, as Agent, is entitled to possession of the IP Collateral.

82. The Defendants have not surrendered possession of the IP Collateral.

83. By reason of the foregoing, Sherfam is entitled to and demands a judgment directing each Defendant, and their agents, officers, directors and employees, (a) to surrender to Sherfam possession of all of the IP Collateral, and (b) to execute such documents as are necessary to transfer full ownership of the IP Collateral to Sherfam.

**NINTH CLAIM FOR RELIEF**

**(Permanent Injunction Against Each Defendant)**

84. Plaintiffs repeat and realleges all of the allegations set forth in paragraphs 1 through 83 above as if fully set forth herein.

85. Each Defendant has violated, and continues to violate Sherfam's rights under the Security Agreement and the IP Security Agreement. CDx's failure to pay the Secured Note when due, the Guarantor Defendants failure to honor the Guarantee, and each Defendants' failure to turn over the Collateral and the IP Collateral are breaches of the Security Agreement and the IP Security Agreement, respectively.

86. By reason of the foregoing, Sherfam, as Agent, is entitled to a permanent injunction enjoining each Defendant, their agents, officers, directors, and employees, and all those acting in combination and concert with them from directly or indirectly using, transferring, selling, pledging, licensing, sublicensing, allowing any liens, claims, or encumbrances to attach to, or otherwise interfering with the Sherfam's rights in taking possession of the Collateral and the IP Collateral.

WHEREFORE, Plaintiff Sherfam respectfully requests that the Court enter judgment in its favor and against each Defendant as follows:

(i) On the First Claim for Relief, judgment against CDx in the amount of no less than $6 million to Sherfam, plus accrued interest at the default rate, attorneys' fees and costs;

(ii) On the Second Claim for Relief, judgment against CDx in the amount of no less than $21 million to Sherfam as Agent, plus accrued interest at the default rate, attorneys' fees and costs;

(iii) On the Third Claim for Relief, judgment against the Guarantor Defendants, jointly and severally, any obligation due and owing from CDx on account of the Secured Note, plus accrued interest at the default rate, attorneys' fees and costs;

(iv) On the Fourth Claim for Relief, judgment against the Guarantor Defendants, jointly and severally, any obligation due and owing from CDx on account of the Loan Agreement, plus accrued interest at the default rate, attorneys' fees and costs;

(v) On the Fifth Claim for Relief, judgment against the Defendants, jointly and severally, any obligation due and owing from the Defendants on

    account of the Forbearance Agreement, plus accrued interest, attorneys' fees and costs;

(vi) On the Sixth Claim for Relief, an order directing each Defendant to (a) marshall their assets for the benefit of the Plaintiff and (b) deliver promptly to Plaintiff a list of those assets and their locations;

(vii) On the Seventh Claim for Relief, an order directing each Defendant to (a) surrender all Collateral to Sherfam; and (b) execute such documents as are necessary to transfer full ownership of the Collateral to Sherfam;

(viii) On the Eighth Claim for Relief, an order directing each Defendant to (a) surrender all IP Collateral to the Sherfam; and (b) execute such documents as are necessary to transfer full ownership of the IP Collateral to Sherfam;

(ix) On the Ninth Claim for Relief awarding a permanent injunction, enjoining each Defendant, their agents, officers, directors, and employees, and all those acting in combination and concert with them from directly or indirectly using, transferring, selling, pledging, licensing, sublicensing, allowing any liens, claims, or encumbrances to attach to, or otherwise interfering with the Sherfam's rights in taking possession of the Collateral and the IP Collateral; and

(x) For such other relief in favor of the Sherfam and against each Defendant to which this Court seems just, equitable and proper, together with the costs and disbursements of this action.

Dated: New York, New York
   December 31, 2015

            OLSHAN FROME WOLOSKY LLP
            *Attorneys for Plaintiffs*


          By: /s/ Jonathan T. Koevary
            Michael S. Fox
            Thomas J. Fleming
            Jonathan T. Koevary
            Park Avenue Tower
            65 East 55th Street
            New York, New York 10022
            (212) 451-2300